UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
:
WATERMELON EXPRESS, INC., :
: 06 Civ. 10199 (WHP)
Plaintiff, :
: MEMORANDUM AND ORDER
-against- :
:
JOSEPH RANDONE, :
:
Defendant. :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

WILLIAM H. PAULEY III, District Judge:

  Plaintiff Watermelon Express, Inc. ("Watermelon"), a produce wholesaler, brings this action pursuant to the Perishable Agricultural Commodities Act ("PACA"), 7 U.S.C. § 499a et seq., to recover $50,871.05 from Defendant Joseph Randone ("Randone") held in trust by purchaser Marine Park Farmers Market, Inc. ("Marine Park"), a company Randone allegedly controlled. On November 2, 2007, this Court found that Watermelon had sold and delivered $50,871 in produce to Marine Park between July and October 2004, creating a trust pursuant to PACA. (Transcript of oral argument dated Nov. 2, 2007 ("Nov. 2 Tr.") at 12; Declaration of Kathleen M. Annicelli dated Sept. 13, 2007 ("Kathleen Annicelli Decl.") Exs. A, B.) This Court denied Watermelon's motion for summary judgment because an issue of fact existed concerning whether at the time the trust was created Randone was a control person of Marine Park who could be held personally liable for the debt Marine Park owes Watermelon. (Nov. 2 Tr. at 13.)

  Having held a bench trial, this Court makes the following findings of fact and conclusions of law, and awards judgment to Watermelon.

## FINDINGS OF FACT

I. <u>Randone's Responsibilities at Marine Park</u>

In April 2004, Randone resigned as president of one of the largest produce sellers in the Hunts Point Market in the Bronx. (Trial Transcript dated Nov. 26, 2007 ("Tr.") at 86, 100.) Shortly thereafter, Rocco Rafaniello, who with his father co-owned Marine Park as a closely-held corporation, invited Randone to join Marine Park. (Tr. at 6, 24, 33, 77.) Randone worked at Marine Park from late June through October 2004. (Tr. at 101.)

Rafaniello testified that he invited Randone to become his "partner"; that Randone agreed to pay him $300,000 for a stake in Marine Park; and that he gave Randone unsupervised decision-making authority over all aspects of Marine Park's business, including its day-to-day operations, banking activities, bookkeeping and interactions with creditors. (Tr. at 7-10.) Randone testified that Rafaniello hired him as a regular employee, and although he acknowledged "running the store" for Rafaniello, he stated that he needed Rafaniello's approval for any act other than throwing out rotten fruit. (Tr. at 77-78, 86, 100.)

Randone became a signatory on Marine Park's checking account and, during his association with Marine Park, signed approximately thirty checks on its behalf. (Tr. at 94.) Rafaniello testified that Randone had the authority to sign Marine Park checks without his authorization, a claim Randone denies. (Tr. at 82-83.) Rafaniello testified that Randone hired two employees to work for Marine Park. (Tr. at 11.) Randone testified that he merely encouraged Rafaniello to hire those employees, but that only Rafaniello had the authority to hire. (Tr. at 83-84.) During his association with Marine Park, Randone never held an official title. (Tr. at 94.)

Randone testified that Ranfaniello agreed to pay him monthly wages of $1,500, and paid him twice in the four months he worked at Marine Park. (Tr. at 100-01.) In September 2004, Randone wrote five checks totaling $25,000 to Marine Park's landlord from a personal checking account he shared with his wife, with the words "Rent for store" written on each check. (Court Ex. 2: Checks signed by Randone dated Sep. 4, 2004; Sep. 4, 2004; Sep. 7, 2004; Sep. 9, 2004; Sep. 10, 2004; Tr. at 35-36.) Rafaniello testified that these payments represented several months of rent that Marine Park owed its landlord; Randone testified that he was paying the landlord a deposit for a hairdressing salon he was planning to open with his wife—although he offers no further evidence of this plan. (Tr. at 35-36, 80-81, 88.) Randone also wrote a check for $20,000 out of the same personal account to Rafaniello with "Deposite [sic] for Business" written on it, although Rafaniello never cashed the check. (Court Ex 3: Check signed by Randone dated Oct. 29, 2004; Tr. at 37.) Rafaniello testified that he did not cash the check because Randone's bank, HSBC, informed Rafaniello that Randone had only $167 in the account. (Tr. at 38.)

II. Randone's Interactions with Marine Park's Suppliers

In June 2004, Randone called a Watermelon salesman, Charles Annicelli ("Annicelli"), to order produce. (Declaration of Charles H. Annicelli dated Sept. 13, 2007 ("Charles Annicelli Decl.") ¶¶ 6-7.) Annicelli testified that Randone told him that he was buying into Marine Park and that he had given Rafaniello money. (Tr. at 57.) Randone denied saying this or even ordering produce from Annicelli, claiming he told Annicelli only that he was working for Rafaniello and that Annicelli should sell produce to Rafaniello. (Tr. at 93-94, 97-98.)

Sometime in 2004, Randone also told Sheldon Nathel ("Nathel"), the vice president of another produce seller that had sold produce to Marine Park on credit that he was going to be a part owner of Marine Park, and that he wanted to negotiate a settlement of Marine Park's debt to Nathel's company. (Tr. at 116-17.) Randone tried unsuccessfully to negotiate a settlement with Nathel on behalf of Marine Park. (Tr. at 119-20.)

## CONCLUSIONS OF LAW

"An individual who is in a position to control the assets of the PACA trust and fails to preserve them, may be held personally liable to the trust beneficiaries for breach of fiduciary duty." Coosemans Specialties, Inc. v. Gargiulo, 485 F.3d 701, 705 (2d Cir. 2007). "A court considering the liability of the individual may look at the closely-held nature of the corporation, the individual's active management role and any evidence of the individual's acting for the corporation." Top Banana, L.L.C. v. Dom's Wholesale & Retail Ctr., Inc., No. 04 Civ. 2666 (GBD), 2007 WL 2746810, at *3 (S.D.N.Y. Sept. 19, 2007) (internal quotations marks and citations omitted). A defendant who signed checks on behalf of a PACA purchaser, was in charge of the company's daily operation, and paid other creditors can be liable for dissipated PACA trust funds even if the defendant did not formally hold an officer's title. "R" Best Product, Inc. v. 646 Corp., No. 00 Civ. 8536 (HB), 2002 WL 31453909, at *6 (S.D.N.Y. Oct. 31, 2002); see also Banco De Desarrollo Agropecuario, S.A. v. Gibbs, 709 F. Supp. 1302, 1306 (S.D.N.Y. 1989) ("Control persons are not limited to officers and directors of the corporation but, rather, are those persons who exercise de facto control of the corporation during the relevant times.").

Randone's actions during his employment at Marine Park indicate that he was in a

4

position to control Marine Park's assets: he ran the business during the day; he hired personnel; he became a signatory on Marine Park's account and regularly signed checks to pay Marine Park's bills; and he negotiated settlements of Marine Park's debts. Randone's interactions with Annicelli and Nathel—informing them he was buying into Marine Park, ordering produce on credit from Annicelli, attempting to negotiate a settlement with Nathel—confirm that he was in a position to exercise control. Moreover, although Randone never formally became a shareholder, his attempted $20,000 payment to Rafaniello and his $25,000 in payments to Marine Park's landlord for overdue rent were de facto investments in Marine Park. Although Randone denied most of these facts and insists he was only a low-level employee at Marine Park, this Court does not find these assertions to be credible. See Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 44 (2d Cir. 2000) ("[D]ecisions as to whose testimony to credit and as to which of competing inferences to draw are entirely within the province of the trier of fact."). Accordingly, Randone was in a position to control the PACA trust assets created by Marine Park's purchase from Watermelon, and therefore is personally liable for those assets. See Coosemans Specialties, 485 F.3d at 705; "R" Best Product, 2002 WL 31453909, at *6.

## CONCLUSION

For the foregoing reasons, this Court finds Randone liable to Watermelon in the amount of $50,871.05 plus interest from the date each of Watermelon's invoices became past due. The parties are directed to submit a judgment by May 27, 2008. The foregoing constitutes this Court's findings of fact and conclusions of law as required by Fed. R. Civ. P. 52.

Dated: May 19, 2008
      New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.

*Counsel of Record:*

Stephen Z. Starr, Esq.
Starr & Starr PLLC
2 Grand Central Tower
140 East 45th Street
New York, NY 10017
*Counsel for Plaintiff*

Robert J. Ansell, Esq.
Silverman Perlstein & Acampora LLP
100 Jericho Quadrangle, Suite 300
Jericho, NY 11753
*Counsel for Defendant*